**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                        Case No.: 09-26076-LMI
B.A. GROUP, INC.
dba Soo Woo Japanese Steakhouse              Chapter 11
fdba Sakura Japanese Restaurant
fdba Sakura At Doral
 Tax ID #65-0726621
                        Debtor.
_____/

**AMENDED PLAN OF**
**REORGANIZATION FOR B.A. GROUP, INC.**

B.A. GROUP, INC. as Debtor and Debtor-in-Possession in the above captioned
Chapter 11 case, proposes the following Plan of Reorganization pursuant to the provisions
of Chapter 11 of the Bankruptcy Code.

The capitalized terms set forth below shall have the following meanings:

1.1    Administrative Claim means a Postpetition Claim, whether secured or
unsecured, that is entitled to priority in accordance with sections 503(b) and 507(a)(2) of
the Bankruptcy Code, including, without limitation, (a) the actual, necessary costs and
expenses, incurred after the Petition Date of preserving the Estates and operating the
business of the Debtor (such as wages, salaries, or commissions for services rendered);
(b) compensation for legal or other services and reimbursement of expenses awarded
pursuant to Section 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges
assessed against the Estates pursuant to Section 1930 of Title 28 of the United States
Code.

1

1.2 <u>Allowed Amount</u> means, with respect to a particular Claim; (a) if the holder of such Claim has not filed a proof of claim as prescribed by the Court within the applicable period of limitation fixed by the Court pursuant to Bankruptcy Rule 3003, the amount, if any, of such Claim that is listed in the Schedule of Assets and Liabilities as being not disputed, contingent, or unliquidated; (b) if the Holder of such claim has duly filed a proof of claim: (i) the amount stated in such proof of claim, if no objection to such proof of claim is interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; or (ii) such amount as shall be fixed by a Final Order, if an objection is interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; (c) with respect to an Administrative Claim, other than a Fee Request, the amount of such Claim or such amount as shall be fixed by a Final Order; or (d) with respect to a Fee Request, such amount as shall be fixed and allowed by a Final Order.

1.3 <u>Allowed Claim</u> means a Claim in the specified class, if any, for which an Allowed Amount has been determined.  When the context so requires, Allowed Claims include Disputed Claims to the extent such Disputed Claims become allowed after the Effective Date.

1.4 <u>Left Blank Intentionally</u>

1.5 <u>Ballot</u> means the ballot or ballots approved by order of the Court for distribution to Holders of Claims in impaired Classes in connection with the solicitation of votes to accept or reject the Plan.

1.6 <u>Bankruptcy Code</u> means Title 11 of the United States Code, 11 U.S.C. Section 101 <u>et. seq.</u>, as of the Effective Date.

2

1.7 <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure and the local rules of the court (including any applicable local rules of the United States District Court for the Southern District of Florida), as of the Effective Date.

1.8 <u>Business Day</u> means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.9 **Intentionally left blank.**

1.10 <u>Claim</u> means any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, mature, unmatured, disputed, secured or unsecured.

1.11 <u>Confirmation Date</u> means the date the clerk of the Court enters the Confirmation Order on the docket.

1.12 <u>Confirmation Order</u> means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.13 **Intentionally left blank.**

1.14 <u>Court</u> means the United States Bankruptcy Court for the Southern District of Florida, Miami Division, or any other court exercising competent jurisdiction over the Reorganization Cases.

1.15 <u>Debtor(s)</u> means B.A. Group, Inc., as debtor and debtor-in-possession in its Reorganization Case.

1.16 <u>Disbursing Agent</u> means the entity or entities designated by the Debtor, with the approval of the Court (which approval may be set forth in the Confirmation Order), to make distributions pursuant to this Plan.  Nothing herein shall preclude the Reorganized Debtor from being designated as the Disbursing Agent.

1.17 <u>Disclosure Statement</u> means the Disclosure Statement that relates to this Plan as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all appendices, exhibits, and schedules annexed thereto or referred to therein).

1.18 <u>Disputed Claim</u> means a Claim that is not an Allowed Claim as to which: (a) a proof of claim has been filed with the Court; or  (b) an objection has been or may be timely filed; and (c) denied in whole or part by a Final Order, or (iii) granted in whole or part by a Final Order.

1.19 <u>Distribution</u> means any distribution, delivery, or issuance of Cash, Reorganization Securities, notes, securities, instruments, assets, or Interests under the Plan to any Holder of a Claim or Interest.

1.20 <u>Distribution Address</u> means the address set forth in the relevant proof of claim. If no proof of claim is filed in respect of a particular Claim.

1.21 <u>Effective Date</u> means the First Business Day which is 30 calendar days after the date the Confirmation Order is final.

1.22 <u>Executory Contract</u> means any executory contract or unexpired lease, subject to Section 365 of the Bankruptcy Code, between any Debtor and any other Person or Persons, specifically excluding all of the contracts and agreements entered into pursuant to this Plan.

4

1.23 <u>Final Order</u> means an Order or judgment of the court, or other court of competent jurisdiction, as entered on the docket of such court that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.24 <u>Impaired</u> means any Claim or Interest which, under the Plan, is not treated pursuant to Bankruptcy Code Section 1124(1) or (2).

1.25 <u>Person</u> means any individual, corporation, general partnership, limited partnership, association, joint stock Company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.26 <u>Petition Date</u> means date of the Order for Relief, August 3, 2009.

1.27 <u>Plan</u> means this Plan of Reorganization, as may be amended all exhibits hereto, together with any amendments or modifications thereof.

1.28 <u>Postpetition</u> means arising or accruing after the Petition Date and before the Effective Date.

1.29 <u>Prepetition</u> means arising or accruing prior to the Petition Date.

1.30 <u>Priority Claim</u> means any Prepetition Unsecured Claim against any Debtor, other than a Priority Tax Claim, which is entitled to priority in accordance with Section 507 of the Bankruptcy Code.

1.31 <u>Priority Tax Claim</u> means a Prepetition unsecured Claim against any Debtor for Taxes owed by any Debtor which are entitled to priority in accordance with Section 507(a) of the Bankruptcy Code.

1.32 <u>Reorganized Debtor</u> means the Debtor on and after the Effective Date.

1.33 **Intentionally left blank.**

1.34 <u>Secured Claim</u> means a Prepetition Claim against any Debtor that is collateralized by a security interest in or lien, mortgage, or other encumbrance on, any right, title, or interest of the Debtor in and to property of the Estates or that is subject to offset under Section 553 of the Bankruptcy Code, the amount of which shall be determined in accordance with Sections 506 and 1111 (b) of the Bankruptcy Code.

1.35 <u>Stipulation</u> means an agreement between the Debtor and the Holder of a Claim.

1.36 <u>Subsequently Allowed Claim</u> means any Claim for which an Allowed Amount is fixed after the Effective Date.

1.37 <u>Taxes</u> means all taxes, charges, fees, levies, imposts, or other assessments by any federal, state, local, or foreign taxing authority including without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated severance, stamp, occupation, and withholding taxes.  Such term shall include any interest, penalties, or additions attributable to, imposed on, or with respect to such assessments.

1.38 **Intentionally left blank.**

1.39 **Intentionally left blank.**

1.40 **Intentionally left blank.**

1.41 <u>Unimpaired</u> means any Claim or Interest which is not Impaired under the Plan.

1.42 <u>Value</u> means in respect of any property of the Debtor constituting Collateral for any Secured Claim, the value of any such property as shall be determined by the Court or by Stipulation.

1.43 <u>Voting Deadline</u> means the last day to vote to accept or reject the Plan as fixed by order of the Bankruptcy Court.

1.44 As used in the Plan, a masculine pronoun shall be deemed to include the feminine and neuter, and all terms used in the singular shall be deemed to include the plural and visa versa.

1.45 The words "herein", "hereof", and "hereunder", and other words of similar import refer to the Plan as a whole, including all schedules annexed or supplemented, and not to any particular article, section or subdivision contained in the Plan.

1.46 Whenever it appears appropriate from the context, each term state in the singular or the plural include the singular and the plural.

1.47 Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code or the Bankruptcy Rules if used therein.

1.48 Captions and Headings to Articles and Sections of the Plan are inserted for convenience or reference only and are not intended to be a part or to affect the interpretation of the Plan.

1.49 The Rules of Construction set forth in Section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the confirmation Order.

<u>ARTICLE II</u>

7

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 <u>General Rules for Classification</u>.

The following is a designation of the Classes of Claims and Interests under this Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. To the extent that the Plan creates a Class in respect of which no Claims are Allowed Claims, the Plan shall be construed as if such Class had not been created and the property, if any, designated to be distributed in respect of such Class shall not be distributed hereunder to any Class of Claims established hereby.

2.2 <u>Classification of Claims and Interests and the treatment thereof:</u>

**Group 1        Administrative Expense Claims**

100% Payment:

Composition: All Claims allowed by the Court pursuant to 11 U.S.C. Section 503 and 507(a)(1).   The Debtor estimates the Administrative Expense Claims to be under $15,000.00.  These claims relate to the fees and expenses of the attorneys for the Debtor.

Treatment: Each holder of an Allowed Administrative claim shall be paid 100% of its Allowed Claim at the rate of $1,000.00 per month beginning in month 1 and continuing until paid in full or as otherwise agreed between the holder of the administrative claim and the Debtor.  All Fee Requests shall be filed no later than 30 days after the Confirmation Date or such other date as established by the Court.

Unimpaired: Administrative Expense Claims are agreed and therefore Unimpaired under the Plan.

**Group 2      Priority Claims:**

**Group 2-A Priority Non-Tax Claims**

100% Payment: Each Holder of an Allowed Priority Non-Tax Claim shall be paid 100% of its Allowed Claim.  The Debtor estimates the amount of Priority Non-tax Claims at zero ($0.00).      Treatment: Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction of such Claim, an amount of cash equal to 100% of the amount of such claim within 15 days of the Effective Date, or within 15 days of the allowance of such Claim by a Final Order, whichever is later, or as soon as practicable thereafter unless such Holder agrees to a different treatment of its Claim.

Priority non-tax claims are unimpaired.

**Group 2-B Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall be paid 100% of its Allowed Claim. All Claims allowed by the court pursuant to 11 U.S.C. Section 507(a)(7).  The Debtor estimate the amount of Priority Tax Claims at zero ($0.00).  The IRS has filed a Proof of Claim, #3, asserting a priority claim in the amount of $6,100.92.  The Debtor believes this is the result of the IRS needing additional information which is being supplied to them.

Treatment: Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such claim, at the option and sole discretion of the Debtor, either: (1) an amount in cash equal to the Allowed Amount of such claim (or any portion thereof), payable as soon as practicable after the Effective Date; or (ii) equal cash payments, paid on the last

Business Day of every month period following the Effective Date, over a period not to exceed five (5) years after the date of the Petition Date of this case assessment of the tax on which such Claim is based, totaling the principal amount of such Claim (or reduced by any cash payments made pursuant to (I) above), plus simple interest on any outstanding balance from the Effective Date at the deficiency rate as determined under I.R.C. Section 6621(c)(3), as amended, for underpayments other than large corporate underpayments, as defined therein, or on such other terms as the Holder of the priority Tax Claims may agree.

**SECURED CLAIMS - CLASS 1** -

**Class 1-A.** Susquehanna Commercial Finance, Inc.

Proof of Claim #12 was filed by Susquehanna Commercial Finance, Inc (Susquehanna) which reflected a secured claim or lease by Susquehanna. The Debtor and Susquehanna reached an agreement which was approved by the Bankruptcy Court on March 2, 2010, DE #52, which valued the secured claim at the Allowed Amount of $12,500.00 in certain air conditioning units financed by Susquehanna. The balance of Susquehanna's claim, in the Allowed Amount of $86,647.00, is a general unsecured claim.

Treatment: Beginning on the Effective Date, Susquehanna will be paid the secured portion of its claim, $12,500.00, in equal monthly payments with interest at 7.40% from the date the Confirmation Order is final. Susquehanna will retain its lien on the collateral securing the original loan or lease. The monthly payments will be approximately $250.00.

Impairment: This Class is impaired

**Class 1-B.** Rockwell Financial Group, LLC

10

Proof of Claim #13 was filed by Rockwell Financial Group, LLC (Rockwell) which reflects a secured claim by Rockwell in the amount of $71,782.67.  Rockwell has supplied additional information to the Debtor which information reflects that Rockwell is indeed entitled to its secured claim in the Debtor's liquor license and that the value of the collateral is at least equal to the secured amount of Rockwell's claim.

Treatment: Beginning on the Effective Date, Rockwell will be paid the secured portion of its claim, in the Allowed Amount of $71,782.67, in equal monthly payments with interest at 7.40% from the date the Confirmation Order is final.  Rockwell will retain its lien on the collateral securing the original loan or the collateral as may have been subsequently corrected.   The monthly payment will be approximately $1435.00.

Impairment: This Class is impaired

**Class 1-C**. Pinnacle Business Finance, Inc.

Proof of Claim #5 was filed by Pinnacle Business Finance, Inc. (Pinnacle) which reflected a secured claim or claimed lease(s) by Pinnacle.  The Debtor and Pinnacle reached an agreement which was approved by the Bankruptcy Court on March 2, 2010, DE #53, which valued the secured claim at the Allowed Amount of $15,000.00 in the equipment which initially secured Pinnacle's claim or was the subject of Pinnacle's lease(s). The balance of Pinnacle's claim, in the Allowed Amount of $175,149.54, is allowed as a general unsecured claim.

Treatment:  Pinnacle's claim shall be treated as a secured claim, rather than as a lease, in the total secured amount of $15,000.00.  The secured portion of the claim will be entitled to interest at the rate of 7.4% per annum.   As was previously approved by the Court, the Debtor will make equal monthly payments of $300.00, for a period of 60 months,

11

beginning March 25, 2010, and mailing said payments to Howard S. Toland, Esq., Mitrani, Rynor, Adamsky & Toland, P.A., 2400 North Commerce Parkway, Suite 302, Weston, FL, 33326.  Pinnacle will retain its lien on the collateral securing the original loan or lease.

Impairment: This Class is impaired

**Class 1-D.** Direct Capital Corporation.

Proof of Claim #4 was filed by Direct Capital Corporation (Direct) which reflected a secured claim or claimed lease(s) by Direct.  The Debtor filed an Objection to Direct's Proof of Claim and asked the Court to value Direct's collateral. Direct did not appear at the continued hearing, held March 29, 2010, and the Court entered an Order Sustaining Objection to Proof of Claim #4 Filed by Direct Capital Corporation, in Part, and Granting Motion to Value Collateral of Direct Capital Corporation, DE #62 ("Direct Order"), valuing the collateral securing Direct's claim in the Allowed Amount of $6,500.00.  The Direct Order set the Allowed Amount of Direct's general unsecured claim at $130,503.95.

Treatment: Direct's claim shall be treated as a secured claim, rather than as a lease, in the total secured Allowed Amount of $6,500.00.  The Debtor will make equal monthly payments with interest at 7.40% from the date the Confirmation Order is final. Direct will retain its lien on the collateral securing the original loan until secured amount is paid.  The monthly payment will be approximately $130.00.

Impairment: This Class is impaired

**Class 2** - Unsecured Claims.

Treatment: All Allowed Claims which were not treated as secured claims in Class 1 above, unless treated in Groups 1 and 2, shall be entitled to receive a total of fifteen-percent (15%) of the Allowed Claim in sixty (60) equal monthly payments, without interest, beginning 30 days from the date the Confirmation Order is final.   At the time of the preparation of this Amended Disclosure Statement, the total of the General Unsecured Claims was approximately $519,444.00 which will equate to monthly payments of approximately $1,300.00.

Impairment: This Class is impaired

**Class 3** - Interests.

Treatment: The stockholder interests of the current shareholders will be canceled.  In consideration for the time and effort expended in the management of the Debtor, the Debtor will authorize the issuance of 100 shares in the Reorganized Debtor. Bok An and his wife ("An"), shall be entitled to 50 shares in the Reorganized Debtor and Kim Sang-Ki and his wife ("Sang-Ki"), will be issued 50 shares in the Reorganized Debtor. An and Sang-Ki will each contribute $500.00 per month for the first 12 months to the Debtor's operation in addition consideration for these shares.

Impairment: This Class is impaired

ARTICLE III

3.1 Funding. The Cash necessary to make the Cash payments required hereunder to be made as of the Effective Date to Holders of Allowed claims will be provided from the Cash resources of the Debtor or the Debtor's new shareholders as of the Effective Date and income generated by the Reorganized Debtor.

13

3.2 <u>Retention of Property</u>. The Debtor shall retain all of their properties, other than that property disposed of during the Chapter 11 case and disposed of pursuant to this Plan.

3.3 <u>Satisfaction of Claims</u>. All claims of creditors shall be satisfied solely in accordance with the Plan.  On and after the Effective Date, the assets of the Debtor shall be free and clear of all claims of creditors arising prior to the Effective Date except as specifically provided for in the Plan or the Confirmation Order.

ARTICLE IV
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1 <u>Assumption and Rejection</u>. On March 2, 2010, the Court entered an ORDER GRANTING *ORE TENUS* MOTION TO ASSUME LEASE AND APPROVING SECOND AMENDMENT TO LEASE AGREEMENT with the landlord, Alteca Real Estate Doral Plaza LLC (DE #55) which allowed the Debtor to assume the underlying lease of non-residential real property from which the Debtor operates its business and which approved a second amendment to the underlying lease .  This lease having been approved by the Bankruptcy Court will continue to be effective, as approved, pursuant to the terms thereof.  As of the Effective Date and effective as of the Petition Date, all executory contracts and unexpired leases of the Debtor shall be rejected by the Debtor pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code, except: (a) any executory contracts and unexpired leases that are or were the subject of separate motions to assume filed pursuant to Section 365 of the Bankruptcy Code by the Debtor before the date of the commencement of the Confirmation Hearing; (b) any executory contracts and unexpired leases for which an Order was entered treating said executory contracts and unexpired leases as Secured Claims in Class 1 above.  **PURSUANT TO RULE 3002-1(C) OF THE LOCAL RULES FOR THE**

14

**SOUTHERN DISTRICT OF FLORIDA, ANY CREDITOR WHO HAS A CLAIM FOR DAMAGES RESULTING FROM THE REJECTION OF A LEASE OR CONTRACT AS FO THE EFFECTIVE DATE OF THE PLAN, SHALL HAVE 30 DAYS FROM THE EFFECTIVE DATE OF THE AMENDED PLAN WITHIN WHICH TO FILE A PROOF OF CLAIM FOR THE "REJECTION DAMAGES."**

Any order entered after Confirmation Date by the Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a Prepetition breach under Sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.

Any executory contract or lease assumed by the Debtor under the Plan shall be deemed assigned, to the extent necessary, to the Reorganized Debtor as of the Effective Date.

4.2 **Intentionally left blank.**

ARTICLE V
DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

5.1 Distributions Generally.

5.1.1. Holders Entitled. Distributions of property under the Plan shall be made only to Holders of Allowed Claims. Disputed Claims shall not be entitled to receive any distribution unless and until their Disputed claims shall become Allowed Claims, and then, only to the extent so Allowed.

5.1.2. Timing. Distributions required to be made under this Plan shall be made either (i) on or within 30 days after the Effective Date if to be made in respect of an Allowed Claim

as of such Date, or (ii) otherwise, on or prior to the first Business Day following the day 30 days after such Claim becomes an Allowed Claim by Final Order as the case may be.

      5.1.3 <u>Method of Cash Distributions</u>. Any Cash payment to be made pursuant to this Plan may be made by draft, check, wire transfer, or as otherwise required or provided under any relevant agreement or applicable law.

      5.1.4 <u>Distributions on Non-Business Days</u>. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

      5.1.5 <u>No Distribution in Excess of Allowed amount of Claim</u>.  No Holder of an Allowed claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.  Except as expressly provided herein, no Claim shall be Allowed to the extent that it is for Postpetition Interest.

      5.1.6 <u>Allocation of Distributions</u>. Distributions hereunder made in respect of any Allowed Claim that includes an interest component shall be allocated on a Pro Rata Basis to the principal and interest components of such Allowed Claim.

      5.1.8 <u>Disputed Payments</u>. If any dispute arises as to the identity of a Holder of an Allowed claim who is to receive any distribution, the Reorganized Debtor may, in lieu of making such Distribution to such person, make such Distribution into an escrow account, to be determined by the Reorganized Debtor it its sole discretion,  until the disposition thereof shall be determined by a Final Order from the Court or by Stipulation among the interested parties to such dispute.

      5.1.9 <u>Distributions to Holders of Allowed Claims on the Effective Date</u>. On the applicable Initial Distribution Date, the Reorganized Debtor shall make a Distribution of Cash to: (i) each Holder of an Allowed Claim in an amount equal to its Pro Rata Share

16

(calculated as of the applicable Initial Distribution Date) of the Cash allocated to the relevant Class; (ii) each Holder of an Allowed Claim in an amount equal to its Pro Rata share of Net Cash Flow allocated to the relevant Class; and (iii) if applicable, the Reorganized Debtor shall make a distribution to the relevant Disputed Claims Reserve of the remaining Cash allocable to the relevant Class after all other distributions are made on the applicable Initial Distribution Date.

5.2.1 <u>Distributions to Holders of Subsequently Allowed Claims</u>.  After Confirmation of this Plan, on the first Business Day after 30 days that a disputed claim becomes an Allowed Claim the Reorganized Debtor shall make Pro Rata distributions to said subsequently Allowed Claim. The distributions to be made to the Holders of Subsequently Allowed Claims shall include all amounts that would have been paid if said Subsequently Allowed Claim had been allowed on the Effective Date, cumulatively, so as to accord such Subsequently Allowed Claims equal treatment with Claims which were not subject to dispute on the Effective Date.

5.3 <u>Unclaimed Distributions</u>.   In the event a Distribution or Distributions are unclaimed, said amount(s) shall become property of the Reorganized Debtor and forfeited by the payee thereof.

5.4.1 <u>Escrow of Unclaimed Property</u>. The Reorganized Debtor shall not retain unclaimed Property

<u>ARTICLE VI</u>
<u>DISPUTED CLAIMS;</u>
<u>SUBSEQUENTLY ALLOWED ADMINISTRATIVE EXPENSES</u>

6.1 <u>Objections to Claims</u>.

17

6.1.1 <u>Time to Object</u>. Unless an earlier or later date is established by the court, all objections to Claims shall be filed with the court and served on the Holders of the Claims to which a party has an objection by the later of: (1) 120 days after the Effective Date: or (2) 60 days after a particular proof of claim is filed with the Court.  If an objection to any Claim is not timely filed by the bar dates established in this paragraph, such Claim shall be treated as an Allowed Claim if such Claim has not been disallowed earlier.  Any Claim which is Allowed under the provisions of this Plan shall be an Allowed claim and not subject to objections by any Person, including the Debtor.

6.1.2 **<u>Intentionally left blank.</u>**

6. 2 <u>Amendment of Claims</u>. A Claim may be amended before the Confirmation Date only as agreed upon by the Debtor and the Holder of such Claim or as otherwise permitted by the Court, Bankruptcy Rules, or other applicable law.  After the Confirmation Date, a Claim may be amended to decrease but not increase the Face Amount thereof.

<u>ARTICLE VII</u>
<u>EFFECT OF THE PLAN ON THE RIGHTS OF</u>
<u>CREDITORS, INTEREST HOLDERS, THE DEBTOR AND OTHERS</u>

7.1 <u>Discharge of the Debtor</u>.

7.1.1 <u>Scope</u>. Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts of Claims against liens on, and interests in the Debtor, their assets, or properties, which debts, Claims, liens, and interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtor shall be effective as to each Claim, regardless of whether a proof of Claim therefore was filed, whether the Claim is an Allowed Claim or whether the Holder thereof

18

votes to accept the Plan.  On the Effective Date, as to every discharged claim any Holder of such Claim shall be precluded from asserting against the Debtor, the Reorganized Debtor, or against their respective assets or properties, any other or further Claim based upon any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

7.1.2 <u>Revesting and Vesting</u>. Except as otherwise provided expressly in this Plan, on the Effective Date, following the Effective Time all property comprising the Estate of the Debtor shall revest in the Reorganized Debtor and shall become property of the Reorganized Debtor free and clear of all Claims, liens, charges, encumbrances, and interests of creditors (other than expressly provided in Section II of this Plan).  As of the Effective Date, the Reorganized Debtor shall operate its business and use, acquire and dispose of property, settle and compromise Claims without supervision of the Court free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay any charges it incurs after the Effective Date for professional fees, disbursements, expenses, or related support services without any application to the Court.

7.3 <u>Retention and Enforcement of Claims and Causes of Action</u>.

7.3.1 Except as otherwise provided expressly in this Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan or by Order of the Court, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any claims, rights, and causes of action that the Debtor or Estates may hold, including without limitation, any claims, rights, or causes of action

19

under Sections 544 through 550, inclusive, of the Bankruptcy Code or any other applicable law.  Debtor may pursue any such claims, rights and causes of action in accordance with what it determines to be in its best interests.

7.3.2 As of the Effective Date, the Reorganized Debtor shall waive and release any and all avoidance actions under Bankruptcy Code Sections 544 through 550 against Holders of Secured Claims listed in Article II above, however, that only those Holders of Secured Claims which vote to accept the Plan shall be granted the release provided herein.

ARTICLE VIII
MODIFICATION OF THE PLAN AND CONFIRMATION OVER OBJECTION

8.1 Modification of the Plan.

8.1.1 Preconfirmation Amendment. The Debtor may amend or modify this Plan at any time prior to the Confirmation Date upon notice to those creditors whose interests may be adversely affected by such amendment or modification and with the approval of the Court.  The confirmation hearing may be continued from time to time.  No notice of any such continuance will be provided other than notice at the hearing and any continued hearing to those attendance.

8.1.2 Postconfirmation Amendment Not Requiring Resolicitation. After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (i) the Debtor obtain approval of the court for such modification, after notice and a hearing; and (ii) such modification shall not materially or adversely affect the interest, rights, treatment, or

distributions of any Class of Allowed Claims or Allowed Interests under the Plan.  Any waiver under section 8.1.4 hereof shall not be considered to be a modification of this Plan.

8.1.3 Consent Required. This Plan may not be altered, amended, or modified without the written consent of the Debtor.

8.2 Request for Confirmation Over Objection.

In the event any Class of Claims votes against the Plan, the Debtor hereby request, and shall be allowed, to modify the terms of this Plan to effect a "cramdown" on such dissenting Class by restructuring the terms of any Reorganization Security to be issued pursuant to the Plan on Terms consistent with Section 1129(b)(2)(A) of the Bankruptcy Code. The Debtor may make such modifications or amendments to this Plan and such modifications or amendments shall be filed with the Court and served on all parties  in interest entitled to receive notice of the hearing on the confirmation of this Plan the later of at least 10 days prior to such hearing and  five days following the Voting Deadline.  No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Interests unless the Court shall require otherwise.

ARTICLE IX
CONDITIONS TO EFFECTIVENESS

9.1 Conditions to Effectiveness. This Plan shall not become effective unless each of the conditions set forth below is satisfied or otherwise waived in accordance with the provisions of Section 9.2 hereof.

9.1.1 The Confirmation Order shall have been entered confirming the Plan and shall have become a Final Order and consummation of the Plan shall not be precluded by any Order, stay, or injunction of a court of competent jurisdiction nor shall there be pending a

suit or appeal challenging the Plan or any transaction related to consummation of the Plan, which, in the reasonable opinion of the Debtor, would have a material adverse effect on the business, properties, condition (financial or otherwise); provided, however, that the Debtor may jointly elect to cause the Plan to become effective notwithstanding any appeal from the Confirmation Order so long as no order has been entered by a court of competent jurisdiction staying the effectiveness of the Confirmation Order;

9.1.2 **Intentionally left blank.**

9.2 Waiver of Conditions to Confirmation and Consummation.

Each of the conditions to effectiveness or consummation of this Plan or the occurrence of the Confirmation Date or the Effective Date is for the sole benefit of the Debtor.  Except with respect to the conditions set forth in Section 9.1 hereof, to the extent that it requires entry of Final Order by the Bankruptcy Court, the requirement that any condition be satisfied may be waived in whole or part by the Debtor, acting together in their sole discretion, without notice and a hearing.  The failure to satisfy or waive any condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including without limitation, any act, action, failure to act or inaction by the Debtor).  Any failure by the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

ARTICLE X
RETENTION OF JURISDICTION
10.1 Retention of Jurisdiction.

Notwithstanding confirmation of this Plan or occurrence of the Effective Date, the Court shall retain jurisdiction over the Reorganization Cases through and after the Effective Date as to all matters, including but not limited to, those matters specifically set forth in this Article X.  Prior to the entry of a final decree of the Court pursuant to Bankruptcy Rule 3022, the Court shall retain jurisdiction:

10.1.1 over all Claims against or Interests in the Debtor;

10.1.2 to determine the allowability of Claims and Interests upon objection to such Claims or Interests;

10.1.3 to determine any tax liability pursuant to Section 505 of the Bankruptcy Code;

10.1.4 to adjudicate any dispute under any executory lease or other contract assumed during the Reorganization Cases pursuant to Section 365 of the Bankruptcy Code, and to resolve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtor;

10.1.5 to determine requests for payment of Administrative Claims;

10.1.6 to resolve controversies and disputes regarding the interpretation of this Plan, including the determination of the priorities of distribution required by Article VII hereof;

10.1.7 to implement the provisions of this Plan and enter orders in aid of confirmation and consummation of this Plan, including without limitation, appropriate orders to enforce the right, title, and powers of the Debtor hereunder;

10.1.8 to determine classification, voting, treatment, allowance, estimation, withdrawal, disallowance or reconsideration of Claims and Interests and any objection relating thereto;

10.1.9 to fix, liquidate, or estimate Claims or Interests;

23

10.1.10 to modify the Plan pursuant to Section 1127 of the Bankruptcy Code;

10.1.11 to correct any defect, to cure any mistake or omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of this Plan;

10.1.12 to adjudicate any causes of action that arose prior to the Confirmation Date or in connection with the implementation of this Plan, including avoidance actions, brought by the Debtor or the Reorganized Debtor as the representative of the Debtor's estates or party in interest (as a representative of the Debtor's estates);

10.1.13 to resolve disputes concerning any Disputed Claims Reserve or the administration thereof and disputes concerning distributions.

10.1.14 to resolve any disputes concerning whether a person or entity had sufficient notice of the Reorganization Case, the applicable Claims bar date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of this Plan for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose.

10.1.15 to order the removal, pursuant to Section 1452 of Title 28 of the United States Code, of any suit instituted against the Debtor, the Estate, or the Reorganized Debtor and to hear and determine any action so removed;

10.1.16 to enter such orders as are necessary or appropriate to carry out the provisions of the Plan;

10.1.17 to enter a Final Order closing the Reorganization Case; and

10.1.18 to hear and determine such other matter as may be provide for under Title 28 or any other title of the United States Code and any reference to the Bankruptcy Court,

the Bankruptcy Code, the Bankruptcy Rules, other applicable law, this Plan or the Confirmation Order.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1 Governing Law. - Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Plan shall be governed by the laws of the State of Florida, without giving effect to any principles of conflicts of law contained therein.

11.2 Corporate Action - The adoption of any new or amended and restated certificates of incorporation and by-laws of the Debtor, and the other matters provided for under the Plan involving the corporate or entity structure of the Debtor, to be taken by or required of the Debtor, as the case may be, shall be deemed to have occurred and be effective as provided herein and shall be authorized and approved in all respects, without any requirement of further action by members of directors of the Debtor.  Without limiting the foregoing, the Debtor shall be authorized, pursuant to Section 1145 of the Code, to issue any instruments required to be issued hereunder.

11.3 Effectuating Documents and Further Transactions. - The Debtor, following the Effective Date, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan. Specifically, prior to the Effective Date.  The Debtor is authorized to execute and deliver such documents, and take such other actions, as may be required under the Plan.

11.4 Successors and Assigns.

25

The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall insure to the benefit of, the heir, executor, administrator, successor, or assign of such person or entity.

11.5 Confirmation Order and Plan Control.

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between or among the Debtor and any third party concerning the Plan, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Court) shall be construed together and consistent with the terms of the Plan.   Notwithstanding the foregoing, the terms and conditions of the Plan shall be dispositive, and shall preempt and control the terms and provisions of the underlying loan documents.   In the case of any conflict between the terms of (1) the Plan, and construed together therewith, the Confirmation Order and (2) the terms or conditions of any of the loan documents underlying a Secured Claim in respect of which a Reorganization Security is issued under the Plan, which are incorporated therein by reference, such conflict shall be resolved by according relative priority and control to the Confirmation Order and Plan, construed together.

Dated: July 30, 2010

Moffa & Bonacquisti, P.A.
Attorneys for Debtor-in-Possession
7771 W Oakland Park Blvd., Ste. 141
Sunrise, FL  33351
Telephone    954-634-4733
Fax              954-337-0637
By: /s/ John A. Moffa
        John A. Moffa
        FBN 0932760
        Mark Bonacquisti, Esq.
        FBN 0703257